**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

Steven H. Blondheim, Civil No. 00-1142 (DWF/AJB)

Plaintiff,

v. **REPORT AND RECOMMENDATION**

Charlie Reed and Robert Feneis,

Defendants.

This matter is before the United States Magistrate Judge for Report and Recommendation on defendants' motion for summary judgment [Docket No. 19]. Plaintiff filed a pro se complaint for violation of civil rights under 42 U.S.C. § 1983. The complaint alleges improper actions by defendants with respect to disciplinary proceedings, thereby resulting in a 120 day lengthening of his prison sentence. The complaint further alleges that defendants' actions relating to delay in treatment for a knee injury have caused him damages. Plaintiff has submitted an objection to summary judgment and a cross motion for declaratory judgment [Docket No. 26] in response to defendants' motion.

The defendants are sued in their official capacities and for "things [done] in a personal manner" with respect to medical claims. The complaint does not specify the constitutional basis for plaintiff's claims though plaintiff filed a motion to clarify [Docket No. 5] in which he asserts that he is not alleging deprivation of medical care in this suit,[1] but he is

[1] Plaintiff alleges medical claims in another civil action that is presently pending in United States District Court. Blondheim v. Olmsted County, Civil File No. 98–1813 DWF/JMM.



FILED APR 30 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

alleging an Eighth Amendment cruel and unusual punishment claim arising out of the extension of detention in a facility that refused to provide proper medical care. Plaintiff's "clarification" also states that he is not making a Fourteenth Amendment due process claim as had been previously suggested by the Court.[2] Despite his contention that he is not making a due process claim, plaintiff's subsequent submissions make several references to denial of due process. For his relief plaintiff requests injunctive relief, as well as a damages award of $300 per day for 120 days and various costs and fees.

Defendants Reed and Feneis move for summary judgment dismissing the claims. Both defendants assert Eleventh Amendment immunity from liability for acts performed in an official capacity and qualified immunity from liability for money damages based upon claims against them in their individual capacities. Defendants further contend that plaintiff has not alleged facts establishing personal involvement as necessary to support medical treatment claims against them, and defendant Reed also asserts his lack of personal involvement in the disciplinary matter. In addition, defendants argue that plaintiff has failed to allege sufficient facts to sustain any of his constitutional claims on the merits, whether relating to medical claims or disciplinary actions. For reasons discussed below, the Court recommends that the defendants' motion for summary judgment be granted and that the complaint in this action be dismissed with prejudice.

## DISCUSSION

**Background and Fact Allegations**

Plaintiff Steven Blondheim commenced this action while he was a Minnesota state prisoner incarcerated at Minnesota Correctional Facility–Lino Lakes. Plaintiff is not

---

[2] Order dated May 17, 2000, footnote 1. [Docket No. 3].

presently imprisoned. Defendant Robert Feneis is the warden at MCF–Lino Lakes, and defendant Charlie Reed was plaintiff's case manager while plaintiff was an inmate at the facility. In December 1996, plaintiff was advised that he must undergo a chemical dependency assessment and follow through with instructions or face possible extension of confinement time.[3] In January 1997, plaintiff participated in an assessment and his participation in a chemical dependency program was recommended Mr. James Linehan from the Chemical Dependency Services Unit.[4] Plaintiff was given 30 days added disciplinary confinement on May 28, 1999,[5] for refusing to participate in treatment,[6] and in July 1999,[7] and August 1999,[8] plaintiff was given written reminders of the chemical dependency treatment directive and the possibility of further discipline for failure to undergo treatment. Discipline hearing was held on August 23, 1999, and plaintiff was thereafter assessed ninety days extended incarceration for refusal to undergo mandated treatment.[9] The prisoner appealed the disciplinary incarceration to the warden, defendant Feneis,[10] and the appeal was denied by memorandum dated August 30, 1999.[11]

---

[3] Affidavit of Charlie Reed, Exh. A.

[4] Affidavit of Charlie Reed, Exh. B.

[5] Plaintiff Exh. 1. Affidavit of Marty McHugh, Exh. A, page 2.

[6] Affidavit of Marty McHugh, Exh. A, page 6.

[7] Affidavit of Charlie Reed, Exh. C. Memorandum from Frank M. Edwards.

[8] Plaintiff Exh. 2. Memorandum from Marty McHugh

[9] Affidavit of Marty McHugh, Exh. 2, page 10.

[10] Id., pp. 11-12.

[11] Id., page 13.

Plaintiff's request for a transcript of the discipline hearing could not be satisfied because pursuant to prison policy the cassette tape was reused following the appeal and a transcript was not prepared.

Meanwhile, Mr. Blondheim was experiencing medical problems relating to a knee injury. Surgery had been recommended by Dr. Robert L. Kurland, M.D., in October 1996.[12] Thereafter, from March 1997, into June 1997, plaintiff participated in a knee therapy and exercise regimen at MCF-Stillwater, and he used a knee immobilizer when walking.[13] In May 1999, Dr. Burkholder saw plaintiff at the Lino Lakes facility in reference to the knee problem. Dr. Burkholder recommended orthopedic consultation for consideration of surgery.[14] Plaintiff subsequently underwent a conservative course of treatment involving a home exercise program and a knee brace.[15] Plaintiff has asserted that this therapy was for purposes of knee strengthening in anticipation of surgery, although he was advised in March 2000, that an orthopedic referral was not made because his knee condition was improving and he had no significant limitations.[16] He was given medical authorization for a cane in April 2000, and at that time he indicated was to be released in June and would wait to have surgery after his release.[17] The record does not

---

[12] Plaintiff Exh. 8.

[13] Affidavit of Fritsch, Exh B, page 1

[14] Id., Exh. A, page 1.

[15] Id., Exh. B, page 2.

[16] Id.

[17] Id., Exh. B, page 3.

clearly indicate the exact date on which plaintiff was released from confinement.[18]

**Summary Judgment**

Defendants move for summary judgment dismissing the complaint in this matter in its entirety. Defendant has moved for declaratory judgment which he further describes as a cross-motion for summary judgment and opposition to defendants' motion. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party has the initial responsibility of demonstrating that there is no genuine issue of material fact to be decided. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). When a motion for summary judgment has been made and supported by the pleadings and affidavits as provided in Rule 56 (c), the burden shifts to the party opposing the motion to put forth evidence demonstrating that a trial is required because a disputed issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In satisfying this burden, however, the opposing party must do more than simply establish doubt as to the material facts. The party opposing summary judgment may not "rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Matsushita. at 586, n.11; Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). Fed. R. Civ. P. 56 (e). Pro se pleadings should be given a liberal construction and held to a less stringent standard than attorney drafted pleadings, Haines v. Kerner, 404 U.S. 519, 520-21 (1972). However, the

---

[18] Plaintiff's memorandum to the Court indicates that by January 12, 2001, he had a non-institutional address in Rochester, Minnesota. The Court presumes that plaintiff's 120 day disciplinary extension began at the time plaintiff was initially anticipating release in June 2000, and that he was released after completing the extended sentence.

plaintiff still must present evidence to defeat a properly supported summary judgment motion and may not rely upon conclusory allegations and unsupported assertions. Dunavant v. Moore, 907 F.2d 77, 80 (8th Cir. 1990).

**Parties and Claims**

Plaintiff filed the § 1983 complaint in this matter on May 5, 2000, naming warden Robert Feneis and case manager Charlie Reed as defendants. The pleading specifically alleges that defendant Reed initiated discipline proceedings against plaintiff by making a false statement asserting plaintiff's refusal to attend chemical dependency treatment, thereby resulting in a 120 day extended sentence; that defendant Feneis wrongly denied plaintiff's appeal of the disciplinary sentence; and that both defendants were aware of plaintiff's medical condition and their actions increased and prolonged his pain and suffering. Plaintiff has explicitly asserted that he is alleging an Eighth Amendment cruel and unusual punishment claim but that he is not alleging deprivation of medical care and is not alleging violation of due process rights.[19] Plaintiff challenges the facts and arguments presented by defendants in support of their motion for summary judgment by frequently referencing due process and the impropriety of the procedures and hearings which resulted in his disciplinary sentencing, but the ultimate legal contention is that the defendants intentionally delayed plaintiff's access to medical care and intentionally interfered with prescribed medical care.[20] Meanwhile, defendants allege immunity defenses, lack of personal involvement with respect to medical issues, and additional defenses to the merits of

---

[19] Motion to Amend/Clarify [Docket No. 5].

[20] Plaintiff's Memorandum in Objection to Motion for Summary Judgment, page 6 [Docket No. 27].

both medical and due process claims. With respect to the merits of plaintiff's claim, he essentially alleges a hybrid of due process violations and denial of medical treatment which merge into an Eighth Amendment cruel and unusual punishment action.

**Immunity Defenses**

**Eleventh Amendment**. The Eleventh Amendment protects the State and arms of the State from liability for damages in a § 1983 action. This same immunity extends to state officials who are named as defendants in a § 1983 action where the suit it brought against an individual acting in an official capacity. In such a case the action is not against the person but is against the office and is no different from a suit against the State itself. See Hafer v. Melo, 502 U.S. 21, 25-26 (1991); Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).

Plaintiff has named the warden at MCF-Lino Lakes and his prison case manager as defendants in this action. The complaint does not explicitly indicate whether defendants are sued in an individual or official capacity though it is stated that defendants' actions were done in a personal manner.[21] Defendants' conduct with respect to claims in this case, as alleged in plaintiff's pleadings, describes actions performed by defendant Feneis, functioning in his duties as warden, and defendant Reed, functioning in his duties as case manager. Neither the pleadings nor plaintiff's supporting arguments allege actions by the warden or case manager which are clearly outside the scope of their official duties as employees of the State of Minnesota or the correctional facility, an arm of the State. To the extent that plaintiffs seek monetary damages for actions taken by either defendant acting in an official capacity, the claims are precluded by Eleventh Amendment immunity.

---

[21] Complaint, IV. Statement of Claim, para. 6 [Docket No. 1].

**Personal Involvement**. Plaintiff in a § 1983 action must allege either a party's direct involvement in alleged unconstitutional actions or the party's participation in the policy decision that created the unconstitutional basis for the allegations. Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985). Absent direct personal involvement, the plaintiff must show that the particular defendant failed to properly train, supervise, direct, or control the subordinate who was directly involved in causing the alleged injury. Crooks v. Nix, 872 F.2d 800, 804 (8th Cir. 1989). The complaint alleges that defendant Charlie Reed initiated disciplinary proceedings by making a false statement regarding plaintiff's chemical dependency treatment and that defendant Robert Feneis had a primary role in denying an appeal of the decision which resulted in the 120 day sentence extension. The defendants' correctly observe that plaintiff has presented no allegations or evidence to support a claim that defendants were personally involved in any medical treatment decision regarding the plaintiff's knee. However, plaintiff has fashioned his complaint in a manner that essentially alleges that a due process violation relating to disciplinary incarceration led to a medical treatment issue having Eighth Amendment implications. While plaintiff's strained methodology and reasoning in relating his disciplinary allegations to his medical and constitutional claims do not ultimately pass muster, he has alleged personal involvement by these defendants. The mere allegation in this instance is sufficient to survive a motion to dismiss for lack of personal involvement. See Martin v. Sargent, 780 F.2d at 1338.

**Qualified Immunity**. Defendants in this matter further assert that they are entitled to qualified immunity from civil damages in their individual capacities, and this Court concludes that both of the defendants are immune from plaintiff's § 1983 claims for money damages based upon plaintiff's failure to allege violation of any clearly established statutory or

constitutional right. The Supreme Court has long held that a state officer sued in his or her personal capacity under 42 U.S.C. § 1983 "may assert personal immunity defenses, such as objectively reasonable reliance on existing law." Hafer v. Melo 502 U.S. 21, 25; 112 S.Ct. 358, 362 (1991). Thus, government officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," are shielded from liability for civil damages. Hartley v. Fine, 780 F.2d 1383, 1387 (8th Cir. 1985), citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In the present case, plaintiff's allegations of constitutional violations involving either disciplinary proceedings resulting in a 120 day extension of confinement or infliction of cruel and usual punishment cannot survive for reasons discussed below in regard to the merits of the constitutional claims. Because the actions by defendants did not violate clearly established statutory or constitutional rights, they are entitled to immunity. Defendants' motion for summary judgment dismissing claims for monetary damages against individual defendants should be granted. See Anderson v. Creighton, 483 U.S. 635, 638 (1987).

**Claims of Constitutional Rights Violations**

Broadly construed, plaintiff's constitutional claim in this matter is that the defendants' interference with his Fifth and Fourteenth Amendment due process rights had the purpose and effect of causing him to suffer cruel and unusual punishment in violation of the Eighth Amendment. Placed in the factual context, plaintiff alleges that defendant Reed wrongly commenced disciplinary proceedings and defendant Feneis wrongly denied an appeal of the imposed discipline. These actions allegedly resulted in delay of plaintiff's opportunity to have knee surgery outside of the institution. Plaintiff's constitutional argument fails in all respects.

**Eighth Amendment.** Defendants interpret plaintiff's Eighth Amendment action as a claim arising from the failure to provide him knee surgery. From that perspective the factual and legal analysis could be somewhat simplified because these defendants are not medical personnel and there is no showing whatsoever that they made medical treatment decisions or had responsibility for providing plaintiff with medical care. However, plaintiff's actual claim is that the actions of these individuals denied him the opportunity to obtain the surgery that he desired. Both the plaintiff and the defendants offer evidence regarding treatment received by plaintiff for his knee problem, including recommendations for surgery. Much of this evidence, perhaps with the exception of pain relief evidence, is not particularly material to this case because plaintiff clearly and admittedly indicated that it was his intention to have the knee surgery performed after his release, and he was not seeking the surgery in the context of this suit.[22] In any event, an Eighth Amendment claim against these defendants must somehow be supported by facts showing that their actions, including the denial of care or causing delay in procuring medical services, are a manifestation of deliberate indifference to serious medical needs constituting unnecessary and wanton infliction of pain. Estelle v. Gamble, 429 U.S. 97, 104-04, 97 S.Ct. 285, 291 (1976). Plaintiff must demonstrate both that he suffered from an objectively serious medical need and that authorities knew about the need and deliberately disregarded that need. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). Plaintiff has not made the necessary showing in this instance.

It is not disputed that plaintiff had a knee injury. Medical personnel at MCF-Lino

---

[22] Plaintiff's clarification of claims states: "Plaintiff is/would not allege deprivation of medical care that is pending in a seperate [sic] civil suit, [See 98-1813 MJD/AJB]. Const. Amend. 8. [Docket No. 5].

Lakes were aware of the problem, knew that plaintiff was a possible candidate for surgical treatment, approved dispensing of aspirin and ibuprofen for pain, and authorized his use of a walking cane. On the other hand, physical therapy and exercise had been effective in improving the knee condition. Whether physical therapy was for purposes of strengthening in preparation for surgery, as plaintiff insists, or was an alternative to surgery, as suggested by defendants, it was the plaintiff himself who decided that he would wait to have surgery on the outside. Under these circumstances plaintiff simply has not shown that he had a serious medical need that was disregarded by prison personnel who were directly responsible for providing medical attention. Plaintiff in this instance seeks to stretch his claim even further by imposing liability on a case manager and a prison warden whose association with the prisoner's medical needs is marginal at best, particularly where there is no indication that medical staff were ignoring the inmate's condition, and there is no evidence whatsoever to suggest that the named defendants became involved in decisions regarding medical issues. Prisoners have no constitutional right to a particular course of treatment, Dulany v. Carnahan, 132 F.3d at 1239, citing Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996), and mere negligence or medical malpractice are insufficient to rise to a constitutional violation. Dulany at 1239, citing Estelle v. Gamble, 97 S.Ct. 285, 291 (1976). In fact, plaintiff's medical needs were attended to by the appropriate parties, the prisoner has not shown that either Reed or Feneis knew of and disregarded a condition that created excessive risk to the prisoner's health, Dulany at 1239, and finally, the evidence in this does not approach a prima facie case of unnecessary and wanton infliction of pain. Estelle v. Gamble at 291. Plaintiff has not presented evidence to support his allegation that defendants violated his Eighth Amendment rights by inflicting cruel and unusual punishment on him, and defendants' motion

for summary judgment dismissing the action should be granted on that basis.

**Due Process.** Plaintiff has explicitly indicated that he is not claiming violation of due process, yet he seems to frequently falls back upon due process allegations to challenge the 120 disciplinary sentence extension which is the link between the actions of the named defendants and the eventual Eighth Amendment medical claim. Whether due process issues are expressed as direct claims for relief, or they are discussed in terms of providing an underlying basis for the Eighth Amendment claim, the plaintiff's failure to demonstrate any denial of due process rights is fatal to his action. Plaintiff contends that defendant Reed caused disciplinary proceedings to be commenced and, on appeal, defendant Feneis rubber-stamped the decision to impose a disciplinary sentence. Plaintiff makes no showing that he did not receive notice of hearing and proceedings relating to the discipline and he hasn't alleged that he was denied a right of appeal. A careful reading of plaintiff's objection to summary judgment reveals the prisoner's disagreement with conclusions regarding his need for chemical dependency treatment, and the existence of disputes relating to whether he refused to sign documents and the implications of such actions. At the same time the prisoner acknowledges that the discipline was subject to hearing, he makes no claim that he did not have notice, and the claim that the hearing decision was rubber-stamped is a mere conclusory allegation which is entirely unsupported in the pleadings or record. Indeed, plaintiff has exclusively attacked the factual basis and results of disciplinary proceedings. He makes no effective argument or showing of fact to suggest that he was denied procedural due process. Meanwhile, with respect to the substance of the discipline case, due process is satisfied if there is some evidence to support the disciplinary action taken. Superintendent, Massachusetts Correctional Inst. v. Hill, 472 U.S. 445, 454, 105 S.Ct. 2768,

2774 (1985). There is sufficient evidence in the record before the Court to persuasively indicate that imposition of a 120 day disciplinary extension to the prisoner's sentence was justified by his failure to participate in required chemical dependency treatment. Plaintiff in this matter was not denied due process rights and, in complete response to his primary claim, the Court finds that there was no deficiency with respect to due process in disciplinary proceedings which subsequently resulted in the infliction of cruel and unusual punishment upon the plaintiff.

**Medical Malpractice**

Though plaintiff has not explicitly alleged a claim of medical malpractice in this action, defendants have argued for dismissal of any such claim. In turn, plaintiff asserts his belief that he was subjected to "some form of medical malpractice.,"[23] but does not state that he is seeking relief on a malpractice claim in this case. In any event, plaintiff cannot maintain a medical malpractice claim against the defendants in this matter. Plaintiff has not submitted an affidavit of expert review pursuant to Minn. Stat. § 145.682,[24] and these named defendants simply did not provide medical care to the plaintiff. Plaintiff has no explicit claim for medical malpractice and he has not established a basis for permitting a malpractice claim to go forward in this action.

**Relief Requested**

In his complaint and motion pleadings in this matter plaintiff makes claims for

---

[23] Plaintiff's Objection to Motion for Summary Judgement, page 9 [Docket No. 27].

[24] Minn. Stat. § 145.682, Subd. 3, requires the plaintiff in a malpractice action to serve an affidavit from a qualified expert, therein asserting that the facts of the case have been reviewed by the expert and that, in the opinion of the expert, one or more defendants deviated from the applicable standard of care and by that action caused injury to te plaintiff.

relief in the form of declaratory judgment, compensatory money damages, injunctive relief, and attorneys fees and costs. Plaintiff has not put forth facts sufficient to show existence of genuine issues of material facts as necessary to survive summary judgment and therefore he is not entitled to the declaratory relief he seeks. Any claim plaintiff may be making for injunctive relief is either moot or unsupported by facts necessary to establish a right to the relief. A prisoner's claim for injunctive relief to remedy conditions of confinement is rendered moot when the prisoner is no longer subject to those conditions. Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985). Plaintiff cannot prevail as a matter of law on his claims for monetary damages and has incurred no attorney fees. There are no triable issues that can survive dismissal on summary judgment in this case. Plaintiff is therefore not entitled to trial or evidentiary hearing on the facts.

## CONCLUSION

Defendants in this matter are entitled to Eleventh Amendment immunity from liability for acts performed in an official capacity and defendants are entitled to qualified immunity based upon underlying facts which fail to establish a basis for constitutional claims though examined in a light most favorable to the plaintiff. Defendants' decisions and actions with respect to prisoner discipline and medical treatment were not in violation of plaintiff's rights to due process or his Eighth Amendment right to be protected from cruel and unusual punishment.

## RECOMMENDATION

Based upon the foregoing discussion and conclusions, the Magistrate Judge **recommends** that defendants' motion for summary judgment [Docket No. 19] be **granted**, and

plaintiff's complaint be dismissed with prejudice. It is further **recommended** that plaintiff's motion for declaratory judgment [Docket No. 26] be **denied**.

Dated: 4/30/01

Arthur J. Boylan
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before May 14, 2001.